IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MELANIE RAEL,

      Plaintiff,

    vs.                                                   No. CIV 97-1096 JC/WWD

LEO MARQUEZ and SANTA FE COUNTY SHERIFF
BENJIE MONTANO, individually and in their official
capacities, and THE COUNTY OF SANTA FE, a
political subdivision of the State of New Mexico,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant Leo Marquez's Motion to Exclude Testimony of Plaintiff's Expert Celeste Skardis and Evidence Regarding Treatment of Plaintiff by Celeste Skardis *(Doc. 57)*, filed July 27, 1998; Defendant Leo Marquez' Motion to Bifurcate His Trial from Santa Fe County Sheriff Benjie Montano and County of Santa Fe *(Doc. 62)*, filed August 20, 1998; and Defendant Leo Marquez' Motion In Limine to Exclude Testimony of Alleged Sexual Harassment, Sexual Behavior and Prior Bad Acts of Defendant Leo Marquez *(Doc 67)*, filed August 20, 1998. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties and the relevant authorities. The Court finds that Defendant's Motion to Exclude Testimony of Plaintiff's Expert is well taken in part and will be granted in part. The Court further finds that the motions to bifurcate trial and to exclude testimony of alleged prior bad acts of Defendant Leo Marquez are not well taken and will be denied.

## I. Factual Background

Plaintiff Melanie Rael alleges that she was sexually assaulted and forcibly raped by Deputy Sheriff Leo Marquez on January 21, 1997, at the Santa Fe Sheriff's Department offices when she went there after working hours to secure his assistance in "fixing" a DWI citation. Rael brings two federal claims against Marquez: (1) violation of her civil rights under color of state law, 42 U.S.C. § 1983; and (2) committing a crime of violence motivated by gender in violation of the Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981. Rael brings federal claims against Montano and the County of Santa Fe for violation of civil and constitutional rights due to negligent supervision and training of its officers and deliberate and reckless indifference to Plaintiff's right to be free from assault, battery and rape by Marquez. Rael also brings state law claims against all defendants for intentional infliction of emotional distress, battery, and assault.

Defendant Marquez filed three pretrial motions that are the subject of this opinion. Defendant Marquez' first motion concerns the proposed testimony of Celeste Skardis, Doctor of Oriental Medicine ("D.O.M."). Dr. Skardis treated Plaintiff from August 26, 1997 through the present. Plaintiff seeks to introduce testimony from Dr. Skardis concerning her treatment. Plaintiff also seeks to introduce Dr. Skardis' expert opinion that Rael's insomnia, neck pain, back pain, headache, emotional distress and physical tension that were present on August 26, 1997 were caused by the rape. Defendant Marquez moves to exclude all testimony of Dr. Skardis and to exclude evidence regarding treatment by Dr. Skardis on the grounds that Dr. Skardis' reasoning and methodology are not valid and that the treatment received by Plaintiff was not medically necessary.

Defendant Marquez' second and third motions concern evidence that Marquez sexually harassed and assaulted women in the past that Plaintiff wishes to present at trial. In particular,

Plaintiff intends to offer evidence from several witnesses that Marquez sexually harassed women and that complaints were filed against Marquez for sexual harassment. Plaintiff also intends to call Jennifer Sandoval to testify that Marquez helped her "fix" two traffic tickets and then brought Sandoval into his office after hours, closed the door, turned out the lights, and began kissing her against her will. Plaintiff claims that this evidence is admissible under FED. R. EVID. 404(b) to show Marquez' motive, intent, planning and preparation in this alleged offense.

Defendant Marquez claims that the evidence of prior misconduct should not be admitted because it is character evidence that is being introduced to show that Marquez' actions were in conformity with his alleged prior conduct. Marquez claims that even if such evidence were otherwise admissible, the evidence should be excluded under FED. R. EVID. 403 because its probative value is substantially outweighed by the danger of unfair prejudice. Marquez moves to bifurcate his trial from that of the other defendants on the grounds that evidence of alleged prior bad acts, if admitted as relevant against the other defendants, would unfairly prejudice him.

## II.     Motion to Exclude Testimony of Celeste Skardis, D.O.M.

The admission of expert testimony is governed by FED. R. EVID. 702. Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Expert testimony must be directed toward a relevant issue in the case for the testimony to be helpful to the trier of fact. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). An expert's opinion must be based on sufficient facts "that enable the expert 'to express a reasonably accurate

conclusion as opposed to conjecture or speculation.'" *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). The proponent of the expert testimony "must demonstrate that the evidence bears a valid scientific connection to the pertinent inquiry." *United States v. Martinez*, 3 F.3d 1191, 1196 (8th Cir. 1993), *cert. denied*, 510 U.S. 1062 (1994) (citing *Daubert*, 509 U.S. at 592).

Plaintiff's Expert Witness and Exhibit List *(Doc. 25)* states that "Dr. Celeste Skardis will testify to her impressions and diagnosis of Ms. Rael as a result of sessions conducted from 8/26/97 to present as well as Dr. Skardis' professional opinion." (Pl. Expert Witness & Ex. List at ¶ 5). Plaintiff's response and supporting brief do not identify the nature of the professional opinion that Plaintiff seeks to introduce, but excerpts from Dr. Skardis' deposition (Ex. A to Def.'s Br. at 17-18; Ex. A to Pl.'s Resp. at 62-63) are illuminating. These excerpts focus on Dr. Skardis' professional opinion that Ms. Rael's symptoms were caused by the alleged rape that occurred seven months before Dr. Skardis first examined Ms. Rael. In her deposition, Dr. Skardis testified that she based her professional opinion on the following observations:

> Her pulses in general were flooding. This can be characteristic of someone who is very upset. Her kidney yang pulse was very weak but overactive. This can mean that her interior temperature mechanism was off. Her small intestine pulse was weak to empty. This can mean her digestion was not working very well. Her liver, gall bladder pulses were very tight. This can mean that she was holding in her anger. Her kidney yin pulse was tight. This can mean that she was using up her energy reserves. Her tongue showed pink with some cracks, a peeled white coating, some teeth marks. These findings can indicate that her digestion is not working optimally. And also, she said that these symptoms were not present before the rape.

(Ex. A to Def.'s Br. at 17-18). Dr. Skardis admitted that she had not examined Rael before the rape and so could not compare Rael's pulses before the rape with pulses after the rape.

Plaintiff provided the Court extensive information on oriental medicine and Dr. Skardis' qualifications as an expert practitioner of this ancient science. There is no doubt that if specialized knowledge on oriental medicine would assist the trier of fact, Dr. Skardis would qualify as an expert in that field. However, Plaintiff has failed to show how specialized knowledge in the field of oriental medicine would be useful to the trier of fact in this case.

Oriental medicine detects and treats disharmony within the body. *See* Ted Kaptchuk, *The Holistic Logic of Chinese Medicine*, SCIENCE DIGEST, 32, 34 (Nov. 1982) (Ex. E to Pl.'s Resp.). Oriental medicine does not concern itself with "a specific disease entity or a precise cause, but renders an almost poetic, yet workable description of a whole person." *Id.* Oriental medicine does not have the concept of a nervous system, endocrine system, or such disease agents as bacteria. *See id.* One of the weaknesses of oriental medicine is that it "can never separate the part from the whole, even when a clinical situation demands that the overall relationships be ignored and a particular part be treated directly." *Id.*

All of the information provided by Plaintiff indicates that oriental medicine is a treatment-based approach, concerned with restoring harmony to the body, rather than identifying the underlying causative agent of the imbalance. Dr. Skardis may be an expert at identifying tight kidney yang pulses and restoring the balance to her patients' bodies; however, there is no indication that Dr. Skardis' expertise in oriental medicine can assist the trier of fact in answering questions such as causation–whether the alleged rape caused the flooding pulses and digestive imbalances that she observed on August 26, 1997. In fact, Dr. Skardis based her conclusion that the alleged rape caused Ms. Rael's symptoms on nothing more than that Rael's body had evidence of disharmony on August 26, 1997 and that Ms. Rael reported she was not suffering from back or neck pain prior to

January 1997. Neither can her expertise assist the trier of fact in determining whether Ms. Rael's alcohol consumption caused or contributed to her malaise, as Dr. Skardis stated in her deposition. (Ex. A to Def.'s Br. at 66-67). Dr. Skardis' opinion on causation would be nothing more than speculation and conjecture. Therefore, I will grant the motion to exclude expert opinion testimony of Dr. Skardis.

My decision on Dr. Skardis' expert testimony is based on narrow grounds and does not extend to prevent Dr. Skardis from testifying as a witness to treatment. Oriental medicine effectively treats many conditions, as Plaintiff's extensive evidence indicates. Whether Dr. Skardis' treatment was reasonable or necessary is a factual issue in dispute that is best left to the jury to decide. Therefore, I will allow Dr. Skardis to present testimony or other evidence concerning her treatment of Plaintiff.

**III.     Motion to Exclude Testimony of
          Alleged Prior Bad Acts**

Although evidence of other crimes or bad acts is generally not admissible to show the propensity of the actor to behave in that manner, such evidence may be admissible to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b). Where a party seeks to introduce evidence of other bad acts under Rule 404(b), four provisions of the Federal Rules of Evidence protect against the danger of unfair prejudice:

(1)    the evidence must be offered for one of the proper purposes listed in Rule 404(b);

(2)    the evidence must be relevant under Rule 402 when offered for that purpose;

(3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice under Rule 403; and

(4) the trial court, upon request, shall instruct the jury that the evidence is to be considered for a limited purpose only, in accordance with Rule 105.

*See Huddleston v. United States*, 485 U.S. 681, 691 (1988).

Plaintiff claims that the evidence of alleged prior sexual harassment and assaults is relevant to show Defendant Marquez' intent and motivation. Plaintiff's complaint includes a cause of action based on the Violence Against Women Act, 42 U.S.C. § 13981. To establish her claim under that act, Plaintiff must show that Marquez' alleged acts were "motivated by gender." *Id.* § 13981(c). Defendant Marquez' intent and motive are central to this claim. Evidence of prior sexual harassment and assaults would be highly relevant to show Defendant Marquez' attitude toward women. *See Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995) (holding that trial court abused its discretion in excluding evidence of sexual harassment of other female employees where supervisor's discriminatory motivation was at issue). I conclude that Plaintiff has established a proper purpose under Rule 404(b) and the evidence of alleged prior sexual harassment and assaults is relevant for that purpose.

Having established the threshold issue that the evidence "is probative of a material issue other than character," *Huddleston*, 485 U.S. at 686, the next step in determining admissibility is to examine whether the danger of unfair prejudice from admitting the evidence, or any of the other considerations listed in Rule 403, substantially outweighs its probative value. *See* FED. R. EVID. 403. Evidence of other conduct toward women is highly probative of a defendant's motivation. *See Heyne*, 69 F.3d at 1479; *see also Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) (holding that an employer's treatment of other older workers is relevant evidence of the employer's discriminatory

intent in an age discrimination case). The danger of unfair prejudice can be minimized by instructing the jury that the evidence is to be used for a limited purpose. *See* FED. R. EVID. 105. I conclude that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any of the other considerations of Rule 403.

The evidence of other alleged bad acts is admissible for a limited purpose. Therefore, upon request, the jury shall be instructed as to its limited scope if such evidence is presented at trial. *See* FED. R. EVID. 105.

**IV.     Motion to Bifurcate Trial**

A court may order separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." FED. R. CIV. P. 42(b). Defendant Marquez cites the possible prejudicial "spillover effect" of evidence of Marquez' alleged sexual harassment of other women that might be relevant against the other defendants but would be irrelevant and unfairly prejudicial to Marquez.

Marquez' argument is based on the premise that the evidence of alleged prior misconduct would be admissible against the other defendants but not admissible against him if he were tried separately. I find that the evidence of alleged prior misconduct is admissible against Marquez as well as against the other defendants. Therefore, Marquez will not be prejudiced by a joint trial. In view of the common questions of law and fact between the claims and the cost of separate trials in both time and expense, I conclude that Marquez has not met his burden to justify bifurcation.

## V.  Conclusion

Wherefore,

**IT IS ORDERED** that Defendant's Motion to Exclude Testimony of Plaintiff's Expert Celeste Skardis *(Doc. 57)* is **granted in part.**  Dr. Skardis may not offer opinion or other expert testimony on the cause of Plaintiff's injuries.  Dr. Skardis may, however, present testimony and other evidence concerning her treatment of Plaintiff.

**IT IS FURTHER ORDERED** that Defendant Leo Marquez' Motion in Limine to Exclude Testimony of Alleged Sexual Harassment, Sexual Behavior and Prior Bad Acts of Defendant Leo Marquez *(Doc. 67)* is **denied.**

**IT IS FURTHER ORDERED** that Defendant Leo Marquez' Motion to Bifurcate his Trial from Santa Fe County Sheriff Benjie Montano and County of Santa Fe *(Doc. 62)* is **denied.**

DATED this 20th day of October, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Daniel A. Sanchez<br>D. Sanchez & Co., P. A.<br>Santa Fe, New Mexico |
| Counsel for Defendants: | William D. Slease<br>Jonlyn M. Martinez<br>Narvaez, Slease & Schamban, P. A.<br>Albuquerque, New Mexico |
| | Judith C. Herrera<br>Herrera, Long & Pound, P. A.<br>Santa Fe, New Mexico |